UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

E. DEANE LEONARD, ROBERT O. DRYFOOS, and STEVEN HABIAGUE,

                         Plaintiffs-Petitioners,

    -against-

THE PLANNING BOARD OF THE TOWN OF UNION VALE, PAUL HESLIN, EUGENE SIMCO, and ARTHUR F. BROD, JR., all such Town Officials joined here in their personal capacity,

                         Defendants-Respondents.

No. 13-cv-6034 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiffs-Petitioners E. Deane Leonard, Robert O. Dryfoos, and Steven Habiague ("Plaintiffs") assert due process and takings claims against the Planning Board of the Town of Union Vale (the "Board"), Paul Heslin, Eugene Simco, and Arthur F. Brod, Jr. (together with the Board, "Defendants") arising out of the Board's rescission of a negative declaration[1] relating to Plaintiffs' proposed subdivision of a 950 acre parcel in Union Vale (the "Project"). Before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint. For the reasons set forth below, Defendants' motion is GRANTED.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/4/2016
```

---

[1] A negative declaration is a determination by a planning board that a proposed project will result in no significant adverse impacts on the environment. (*See* Second Amended Complaint ("Am. Compl.") (ECF No. 19) ¶ 6.)

## BACKGROUND

**I.      Factual Background**[2]

In 1986, Plaintiffs Leonard and Habiague applied to have their property located on East Mountain in the Town of Union Vale designated an open development area under New York Town Law § 280-a(4).  (Am. Compl. ¶ 16.)  Plaintiffs' application was granted, which allowed the property to be subdivided into private lots serviced by private roads.  (*Id*.)  The first section of the project, "East Mountain," was approved in 1987.  (*Id*.)  In 1987, the Board made a determination under the New York State Environmental Quality Review Act ("SEQRA") that the Project would result in no significant adverse impacts on the environment (the "Negative Declaration").  (*Id*. ¶ 6.)

In 2009, Plaintiffs applied for a subdivision of the next section of the Project, known as "East Mountain North."  (*Id*. ¶ 17.)  Similar to the 1987 proposal, the plan provided for large single-family homes.  (*Id*.)  According to Plaintiffs, East Mountain North conforms to Union Vale's Master Plan and Conservation Density rules set forth in UV Code § 192-25.  (*Id*. ¶ 19.)  By 2009, Plaintiffs reached an agreement with the Board as to the layout of North End Road, the proposed access from the north end of the property.  (*Id*. ¶ 85.)  Subsequently, however, the Board introduced a 200 foot minimum radius requirement for all curves on North End Road during a March 16, 2010 meeting.  (*Id*. ¶ 86.)  The construction of the road with these requirements would double the level of ground disturbance.  (*Id*. ¶ 88.)

In March 2012, the Board rejected Plaintiffs' application for East Mountain North.  (*Id*. ¶ 25.)  Plaintiffs sued the Board in New York State Supreme Court, Dutchess County.  (*Id*. ¶ 27;

---

[2] The following facts are taken from the Second Amended Complaint, except as otherwise noted.  The Court assumes the facts to be true for the purpose of deciding this motion and construes them in the light most favorable to Plaintiffs, the non-moving party.

Ex. 2.)  The Court denied Defendants' motion to dismiss Plaintiffs' second amended complaint; found that the Board's 2012 resolution rescinding the Negative Declaration was invalid; and determined that the Board's rejection of Plaintiffs' application for preliminary plat approval was arbitrary and capricious.  (*Id*. at Ex. 2.)

Thereafter, the Board called a public hearing to determine (i) the applicability of the Negative Declaration to East Mountain North and (ii) whether the Negative Declaration should be amended or rescinded.  (*Id*. ¶ 34.)  The Board opened the hearing at its regularly scheduled meeting on May 15, 2012 and convened a workshop to discuss East Mountain North on June 5, 2013.  (*Id*. ¶ 36.)  After requesting comments from various agencies, including the Town's Conservation Advisory Council ("CAC"), the Board held a final public hearing on June 19, 2013.  (*Id*. ¶ 37.)  CAC, in its report, advised the Board to keep the Negative Declaration in place.  (*Id*. ¶ 41.)  At the conclusion of the June 19 hearing, the members of the Board adopted a resolution to rescind the Negative Declaration (the "Resolution") without discussion.  (*Id*. ¶ 44.)

According to the Second Amended Complaint, the Resolution identifies no change in the Project that would have a significant adverse impact.  (*Id*. ¶ 45.)  Moreover, the changes in laws and regulations cited in the Resolution as grounds for rescission of the Negative Declaration all result in a lower environmental impact.  (*Id*. ¶ 46.)  The Resolution identifies a host of other issues with the Project, such as the safety of a main road and potential dangers to students, that Plaintiffs assert are meritless.  (*Id*. ¶¶ 50–60.)  The Resolution contains the full text of Section 617.7 of the SEQRA Regulations, which is the provision governing rescission of a negative declaration.  (*Id*. ¶ 67.)  Prior to the Board's adoption of the Resolution, Plaintiff Habiague objected on the grounds that he did not have a reasonable opportunity to respond to the rescission.  (*Id*. ¶ 70.)

## II.     Procedural History

On or about May 9, 2012, Plaintiffs commenced an action in state court by the filing of a summons with notice and verified complaint ("*Leonard I*"). The complaint was subsequently amended twice and asserted the following: The April 18, 2012 resolution adopted by the Board was improper, and the Board's March 21, 2012 rejection of Plaintiffs' application should be annulled. The complaint also contained a due process claim pursuant to 42 U.S.C. § 1983. On or about August 17, 2012, the Board moved to dismiss the second amended complaint. By decision and order dated March 12, 2013, Justice Maria G. Rosa of the New York State Supreme Court, Dutchess County, found that the Board's Resolution was adopted in an "arbitrary and capricious" manner in violation of 6 N.Y. Comp. Codes R. & Regs. § 617.7(e) and (f). The Board timely filed a notice of appeal on April 4, 2013 and perfected the appeal on November 4, 2013. The Board moved to reargue the portion of its motion that sought dismissal of Plaintiffs' due process claims. By decision and order dated November 8, 2013, the Court granted the Board's motion to reargue and thereafter granted the Board's motion to dismiss Plaintiffs' due process claims.

Following the Board's rescission of the Negative Declaration, Plaintiffs institute a second action in state court on or about August 9, 2013 ("*Leonard II*"). Defendants removed the action from New York State Supreme Court, Dutchess County, to federal court by notice dated August 21, 2013. (ECF No. 1.) By a memorandum and order dated January 16, 2014, this Court declined to exercise supplemental jurisdiction over Plaintiffs' Article 78 and state law claims and remanded such claims to state court. (ECF No. 16.) Thereafter, Defendants filed a motion to dismiss Plaintiffs' Second Amended Complaint. (ECF No. 21.)

**STANDARD ON A MOTION TO DISMISS**

On a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir. 2010). "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Determining whether a complaint states a facially plausible claim upon which relief may be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**DISCUSSION**

Presently before the Court is Defendants' motion to dismiss (1) Plaintiffs' due process claims[3] and (2) Plaintiffs' claim that the conservation easement constitutes a "taking."[4]  Before

---

[3] Construing Plaintiffs' Second Amended Complaint liberally, Plaintiffs allege both substantive and procedural due process violations, because they assert that the Board acted in an arbitrary and capricious manner in rescinding the Negative Declaration (substantive) and failed to afford Plaintiffs an opportunity to respond to the Resolution prior to its adoption (procedural).

[4] In their opposition brief, Plaintiffs state that Defendant's motion to dismiss the takings claim should be granted, without prejudice to Plaintiffs' right to reassert such claim, if necessary, once the town of Union Vale takes

turning to the merits of Plaintiffs' due process claims, the Court first addresses whether those claims are ripe for review.

**I.     Ripeness**

"In order for claims to be justiciable under Article III, courts have long recognized that the controversy, as an initial matter, must be ripe." *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 348 (S.D.N.Y. 2000) *aff'd*, 252 F.3d 645 (2d Cir. 2001) (citing *Marchi v. Board of Coop. Educ. Servs. of Albany,* 173 F.3d 469 at 478 (2d Cir. 1999) ("ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts.") (internal quotations omitted); *Thomas v. City of New York,* 143 F.3d 31, 34 (2d Cir. 1998)). "Particularly, as here, where the dispute involves administrative and zoning regulations, the ripeness doctrine restrains courts from entangling themselves in abstract disagreements over policies, freeing agencies from judicial interference until an actual administrative decision has been formulated and its effects concretely realized." *Kittay*, 112 F. Supp. 2d at 348 (*citing Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 (1977); *Pennell v. City of San Jose,* 485 U.S. 1, 10 (1988) ("We have found it particularly important in takings cases to adhere to our admonition that the constitutionality of statutes ought not be decided except in an actual factual setting that makes such a decision necessary.")).

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City* ("*Williamson*"), the Supreme Court announced a two-part test for determining takings claim ripeness. 473 U.S. 172, 186–87 (1985). First, the court must ascertain whether the government entity charged with instituting the relevant regulation rendered a "final decision." *Id*. at 186.

---

action on the conservation easement. (Pls.' Opp. at 23.) The Court construes this statement as Plaintiffs' notice of voluntary dismissal pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure and dismisses Plaintiffs' takings claim without prejudice.

Second, a plaintiff must have "sought compensation if the state provides a 'reasonable, certain and adequate provision for obtaining compensation.'" *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 95 (2d Cir. 1992) (citing *Williamson*, 473 U.S. at 194) (quoting *Regional Rail Reorganization Act Cases*, 410 U.S. 102, 124–25 (1974)).  Only when both elements are satisfied is a takings claim considered ripe for the court's review.

The *Williamson* test subsequently has been extended to apply to due process claims.  *See, e.g.*, *Southview Assocs.*, 980 F.2d at 96–97; *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88–89 (2d Cir. 2002); *Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 515 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1156, 190 L. Ed. 2d 912 (2015).  While the Second Circuit has held that both prongs of *Williamson* apply to procedural due process claims "arising from the same nucleus of facts as a takings claim," *Kurtz*, 758 F.3d at 515, a "substantive due process claim premised on arbitrary and capricious government conduct"—such as the substantive due process claim at issue here—"is subject to only the final decision prong of the *Williamson* ripeness test." *Southview Assocs.*, 980 F.2d at 96–97.  "The requirement that a plaintiff seek compensation in state court is . . . derived from the Takings Clause, to which a substantive due process claim, premised on arbitrary and capricious government conduct, is largely unrelated." *Id*. at 97 (internal citations omitted).[5]

### A. Final Decision

"A final decision is 'a definitive position on the issue that inflicts an actual, concrete injury.'" *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003) (quoting *Williamson*, 473 U.S. at 193).  "In a land use development context, a final decision requires that

---

[5] Plaintiffs argue that the New York Court of Appeals' decision in *Gordon v. Rush*, 100 N.Y.2d 236 (2000), governs the ripeness inquiry.  (Pls.' Opp. at 12.)  However, where, as here, the basis for the court's federal jurisdiction is the existence of a federal question, federal law governs.  Therefore, the Court will analyze the ripeness of Plaintiffs' claims under federal law.

'a development plan must be submitted, considered and rejected by the governmental entity. Even when the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until plaintiff also seeks variances that would allow it to develop the property.'" *Osborne v. Fernandez*, No. 06-cv-4127 (CS) (LMS), 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009) *aff'd*, 419 F. App'x 350 (2d Cir. 2011) (quoting *Country View Estates @ Ridge, LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 149 (E.D.N.Y. 2006) (internal quotation marks omitted)). "'The rationale behind the finality requirement is that a court cannot demonstrate whether a Plaintiff has been deprived of property arbitrarily or otherwise, until it has a final definitive position before it on how the administrative agency will apply the regulation at issue to the particular land in question.'" *Roman Catholic Diocese of Rockville Centre, New York v. Incorporated Vill. of Old Westbury*, No. 09-cv-5195 (DRH) (ETB), 2011 WL 666252, at *17 (E.D.N.Y. Feb. 14, 2011) (quoting *R-Goshen LLC*, 289 F. Supp. 2d at 448).

The Second Circuit appears to have recognized a "futility" exception to the final decision requirement if a plaintiff can demonstrate the following: (1) "the inevitability of refusal of their application," *Osborne v. Fernandez*, No. 06-cv-4127 (CS) (LMS), 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009) *aff'd*, 414 F. App'x 350 (2d Cir. 2011), and (2) that they have already filed "at least one meaningful application." *Id*. (citations omitted). "To demonstrate futility, Plaintiffs must prove that Defendants dug in their heels and made clear that all . . . applications will be denied." *Id*. at 6 (citations omitted).

The relevant question for the Court is whether the Board's rescission of the Negative Declaration constitutes a "final decision." The Second Circuit has held that a board's rendering of a positive declaration does not constitute a final decision because it is "by no means a rejection or disapproval of the project." *Reifler v. City of Poughkeepsie, N.Y.*, 122 F.3d 1057 (2d

Cir. 1997); *see also Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 406 (E.D.N.Y. 2008) ("The law is well-settled in New York that a positive declaration pursuant to SEQRA is not a final agency decision that is reviewable under New York Law." (collecting cases)).

Though a positive declaration is not a final decision, at least one court in this District appears to recognize a distinction between a positive declaration and the rescission of a negative declaration. Citing the futility exception, the court in *Westchester Day School v. Village of Mamaroneck* held that the rescission of a negative declaration presented a "justiciable controversy." 236 F. Supp. 2d 349, 355 (S.D.N.Y. 2002). There, the court relied upon the fact that it appeared the defendants would not approve plaintiff's construction and renovation plans prior to submission of an Environmental Impact Statement ("EIS"), which would significantly increase the cost of plaintiff's project. *Id*. Additionally, the Court noted that the board made a decision to rescind the negative declaration in the face of thorough studies approving the project. *Id*. Finally, the court cited "the fact that extensive hearings have been held concerning environmental issues ranging from traffic impact to aesthetics" as grounds for finding the rescission of the negative declaration ripe for review. *Id*. at n. 7.

Viewed in the light most favorable to Plaintiffs, the facts in the present action are similar to those in *Westchester Day School*. Here, the Board rescinded the Negative Declaration in the face of CAC's opinion advising that the Board keep the Negative Declaration in place. (Am. Compl., ¶ 41.) Additionally, Plaintiffs now will be required to submit an EIS. (Def.'s Mot. at 4.) Plaintiffs' Second Amended Complaint thoroughly debunks each of Defendants' proffered reasons for rescinding the Negative Declaration. For example, though the Resolution states that Mack Road is dangerous, Plaintiffs point out that in the midst of a 2010 project, the Town Engineer concluded that the road was safe for loaded logging trucks. (Am. Compl. ¶¶ 49–51.)

The Second Amended Complaint further notes that there have been only two accidents on Mack Road in the last 22 years, which significantly undermines Defendants' argument that the road is dangerous. (*Id*. ¶ 55.) The propriety of the Board's rescission of the Negative Declaration is further undermined by the fact that the Resolution identifies no change in the Project that would have a significant adverse environmental impact (*id*. ¶ 45) and that the changes in laws and regulations cited in the Resolution as grounds for rescission all result in a lower environmental impact. (*Id*. ¶ 46.) Because it would be futile to require Plaintiffs to seek a final determination, Plaintiffs have satisfied the first prong of the *Williamson* test. Therefore, Plaintiffs' substantive due process claim is ripe for review.

### B. State Law Action

The Court next turns to the second prong of the *Williamson* test—whether Plaintiffs have exhausted their state court remedies—to further evaluate the ripeness of Plaintiffs' procedural due process claim. The Second Circuit has held that "when a defendant removes a takings claim from state court to federal court, the second prong of *Williamson County* is satisfied." *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014). The Second Circuit agreed with the Fourth Circuit's rationale set forth in *Sansotta v. Town of Nags Head* that "refusing to apply the state-litigation requirement in this instance ensures that a state or its political subdivision cannot manipulate litigation to deny a plaintiff a forum for his claim." *Id*. (quoting *Sansotta*, 724 F.3d 533, 545 (4th Cir. 2013)). Here, the Defendants jointly removed this case from New York State Supreme Court, Dutchess County, on August 21, 2013. (*See* ECF No. 1.) Therefore, this Court finds that Plaintiffs have satisfied the second prong under *Williamson*, and Plaintiffs' procedural due process claim is ripe for review.

## II. Due Process Claims

The Court next turns to whether Plaintiffs have asserted viable procedural or substantive due process claims under 42 U.S.C. § 1983. The Due Process Clause of the Fourteenth Amendment requires that no "state . . . deprive any person of life, liberty, or property, without due process of law." "In order to succeed on a due process claim, whether procedural or substantive, [a] plaintiff must identify a valid liberty or property interest." *Vlahadamis v. Kiernan*, 837 F. Supp. 2d 131, 155 (E.D.N.Y. 2011) *amended*, No. 08-cv-2876 (DRH) (AKT), 2011 WL 5156340 (E.D.N.Y. Oct. 28, 2011) (citing *Toussie v. County of Suffolk,* 806 F. Supp. 2d 558, 578–79 (E.D.N.Y. 2011); *Local 342, Long Island Pub. Serv. Emps. v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994); *and Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)); *see also Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) (citing *Brady v. Town of Colchester*, 863 F.2d 205, 211-12 (2d Cir. 1988) (requiring a plaintiff to first allege a property interest)). Liberally construed, the Second Amended Complaint seeks to allege a claim for deprivation of a property interest without due process based on the Board's efforts to rescind the Negative Declaration.

"When a landowner alleges that he has been deprived of property in violation of the due process clause by the actions of a state zoning authority, [the court begins its] inquiry by determining whether a constitutionally cognizable property interest is at state." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378–79 (2d Cir. 1995). "Property interests are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Safepath Sys. LLC v. New York City Dep't of Educ.*, 563 F. App'x 851, 854 (2d Cir. 2014) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S.

11

564, 577 (1972)).  "Such an interest cannot be created out of 'an abstract need or desire for it,' nor from a 'unilateral expectation of it'; rather, a plaintiff must 'have a legitimate claim of entitlement to it.'"  *Id*. at 854-55.  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005).  *See also Soundview Assocs. v. Town of Riverhead*, 893 F. Supp. 2d 416, 431 (E.D.N.Y. 2012) (citing *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 917 (2d Cir. 1989)) (In the land use context, finding an entitlement to a benefit "only when the discretion of the issuing agency is so narrowly circumscribed as to virtually assure conferral of the benefit.") (internal quotation marks omitted); *Lucas v. Planning Bd. of Town of LaGrange*, 7 F. Supp. 2d 310, 324 (S.D.N.Y. 1998) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994) ("It is well settled in this Circuit that a constitutionally protected property interest in land use regulation arises only if there is an entitlement to the relief sought by the property owner.")).

Here, Plaintiffs do not have a cognizable property interest in the Negative Declaration.  As Defendants point out, the Board has substantial discretion, pursuant to 6 N.Y. Comp. Codes R. & Regs. § 617.7(f), to determine whether to rescind a negative declaration.  (Def.'s Mot. at 7) (citing *Coal. to Save Cedar Hill v. Planning Bd. of Inc. Vill. of Port Jefferson*, 68 A.D.3d 764, 767 (2d Dep't 2009) (court reviews planning board's decision not to rescind negative declaration for "abuse of discretion").  "[T]he central factor" in determining a property interest "is the degree of discretion possessed by the regulating body."  *Southview Assocs., Ltd.*, 980 F.2d at 101 (*citing RRI Realty Corp.*, 870 F.2d at 918).  Because the Board's authority to rescind the Negative Declaration is not "so narrowly circumscribed" and instead affords the Board discretion to—and indeed mandates that it—review both "new information" and "changes in circumstances related

to the project . . . that were not previously considered" and may have a "significant adverse environmental impact," (6 N.Y. Comp. Codes R. & Regs. § 617.7(f)) the Court finds that Plaintiffs do not have a cognizable property interest in the Negative Declaration. Without such an interest, Plaintiffs' due process claim fails.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiffs' due process claims are dismissed with prejudice, and Plaintiffs' takings claim is dismissed without prejudice. The Court respectfully directs the Clerk to terminate the motion at ECF No. 29 and close the case.

Dated: January 4, 2016
        White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge